**FILED**

May 23, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ pg

DEPUTY

Iris Halpern*
Azra Taslimi*
Rathod | Mohamedbhai LLC
2701 Lawrence Street
Denver, CO 80205
Telephone: (303) 578-4400
Facsimile: (303) 578-4401
ih@rmlawyers.com
at@rmlawyers.com
*Attorneys for Plaintiff*

*\* Admitted Pro Hac Vice*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |  |
|---|---|---|
| BARBARA SUZETTE BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-CV-228-RP |
| | ) | |
| LLANO COUNTY, | ) | |
| a municipality; | ) | |
| RON CUNNINGHAM, | ) | |
| in his official capacity as Presiding Officer | ) | |
| of the Llano County Commissioners Court, | ) | |
| and his individual capacity; | ) | |
| AMBER MILUM, | ) | |
| in her official capacity as Director of | ) | |
| Llano County Library System, | ) | |
| and her individual capacity; | ) | |
| JERRY DON MOSS, in his individual capacity; | ) | |
| BONNIE WALLACE, in her individual capacity; | ) | |
| ROCHELLE WELLS, in her individual capacity; | ) | |
| RHONDA SCHNEIDER, in her individual capacity; | ) | |
| and, GAY BASKIN, in her individual capacity; | ) | |
| | | |
| Defendants. | | |

---

## FIRST AMENDED COMPLAINT

---

## <u>INTRODUCTION</u>

Public libraries are regulated by government bodies and are public forums subject to protections against content-based decisions.[1]When government officials who administer libraries make decisions based on content, they violate the First Amendment of the United States Constitution. Likewise, when such government officials make decisions based on prejudice and animus towards minority classes, the Fourteenth Amendment of the United States Constitution is equally transgressed. These Constitutional protections ensure that public libraries remain civically integrated and bastions of intellectual freedom and open discourse within our communities.

In 2021, Plaintiff Barbara Suzette Baker worked as Head Librarian at the Kingsland Library in Kingsland, Texas. A life-long lover of books and ideas, she found herself the target of a burgeoning politicized movement seeking to ban books in libraries and schools, reflecting a disconcerting, anti-American, and unconstitutional nationwide trend. At the behest of, and colluding with, other public officials, Amber Milum, the Llano County Library System Director, ordered Ms. Baker to purge certain books, primarily those written by or thematically about racial minorities and LGBTQ+ individuals, from the Kingland Library's collection. When Ms. Baker refused, Defendant Milum terminated her for "insubordination," "creating a disturbance,"

---

[1] The Supreme Court long ago confirmed the First Amendment right for persons to receive information and ideas, particularly in public libraries because "the right to receive ideas is a necessary predicate to the *recipient's* meaningful exercise of his own rights of speech, press, and political freedom." *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) (emphasis in original). This right to access ideas and content precludes any public library system from purging books from library shelves "simply because they dislike the ideas contained in those books and seek by their removal to 'prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion.'" *Id.* (internal quotations omitted). Importantly, "the right to access to information" recognized by the Supreme Court in a case about public school libraries has "'even greater force when applied to public libraries,' since public libraries are 'designed for freewheeling inquiry,' and the type of discretion afforded to school boards is not implicated." *Little v. Llano Cnty.*, No. 1:22-CV-424-RP, 2023 WL 2731089, at *8 (W.D. Tex. Mar. 30, 2023) (omitting internal quotations).

"violation of policies," "failure to follow instructions," and – most ironically – for "allowing personal opinions to interfere with job duties and procedures."

This is a direct evidence case. Defendants expressed clear animus towards protected groups and associated Ms. Baker with those groups and/or with advocacy and opposition against discrimination against those groups. Defendants suppressed Ms. Baker's speech and association. And Defendants conspired to force Ms. Baker to deprive others of their fundamental rights. In their campaign of animosity and censorship, Defendants long-ago crossed the line. As a result, they have caused Ms. Baker significant injuries, as well as indelibly harming their constituents and community, all actions for which they must be held responsible and be subjected to accountability.

## JURISDICTION, VENUE, AND PARTIES

1.      This action is authorized and instituted under the Constitution and laws of the United States pursuant to Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e et seq. and 42 U.S.C. §§ 1981(a), 1983, and 1985. Subject-matter jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331, 1343. Jurisdiction supporting Plaintiff's claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988.

2.      Venue is proper in the Western District of Texas pursuant to 28 U.S.C § 1391(b). All Defendants reside within and/or perform official duties within the Western District of Texas. This Court, accordingly, has personal jurisdiction over each Defendant.

3.      At all times relevant hereto, Ms. Baker is a citizen of the United States and a resident of the State of Texas.

4.      Defendant Llano County is a municipality in the State of Texas. Defendant Llano County performs official functions related to public libraries through Defendant Llano County Commissioners Court.

5.      The Llano County Library System is one of Defenant Llano County's offices. The Library System's finances are controlled as revenues and expenditures within the county budget, and its employees are county employees.

6.      The Llano County Library System has one director, one head librarian for each of its three libraries, librarians, and other support staff.

7.      Defendant Llano County Commissioners Court is the local governing body responsible for conducting the general business of the county, adopting the county's budget and tax rate, approving county purchases, setting salaries and benefits, exercising its exclusive authority to authorize contracts, and establishing, maintaining, and overseeing the Llano County Library System. In exercising authority over the Llano County Library System, Defendant Llano County Commissioners Court performs official functions through the Llano County Library Advisory Board and authorizes Defendant Ron Cunningham to act as a final policymaker.

8.      Defendant Amber Milum is the Director of the Llano County Library System, is authorized to act as a final policymaker for the Llano County Library System, and reports to the Llano County Commissioners. She is a resident of the Western District of Texas.

9.      Defendant Ron Cunningham serves as the elected County Judge and Presiding Officer of Defendant Llano County Commissioners Court. Despite his title being County Judge, Defendant Cunningham does not have a law degree, is not a licensed attorney, and has never attended law school. Prior to being elected, Defendant Cunningham was a federal contractor and security consultant. Defendant Cunningham in his official capacity is the final policymaker for Defendant Llano County.  He is a resident of the Western District of Texas.

10.     Defendant Jerry Don Moss is an officer of Defendant Llano County Commissioners Court. He is a resident of the Western District of Texas.

11.     Defendants Bonnie Wallace, Rochelle Wells, Gay Baskin, and Rhonda Schneider are members of the Llano County Library Advisory Board. They are all residents of the Western District of Texas.

12.     The Llano County Advisory Board is "authorized by the Llano County Commissioners Court" to review the Llano County Library System's policies and procedures, contractual agreements, affiliations, functions, finances, collection, public relations, administration, management, and operation.

13.     Llano County Commissioners appoint members of the Llano County Library Advisory Board, and the full Commissioners Court approves the appointments.

14.      The Llano County Library Director is an ex-officio member of the Llano County Advisory Board and supervised by the Llano County Commissioners Court.

15.     The Llano County Commissioners Court, on behalf of Llano County, oversees and controls the Llano County Library Advisory Board, the Llano County Library System, and its Director and  makes all of its financial, employment, and policy decisions.

## ADMINISTRATIVE EXHAUSTION

16.     Ms. Baker filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 30, 2022.

17.     The Charge of Discrimination included allegations under Title VII of the Civil Rights Act of 1964 of race, color, sex, and national origin discrimination and retaliation, including on the basis of association and advocacy and for engaging in protected activities.

18.     The Charge of Discrimination is still under investigation at the EEOC. It is unknown when the investigation shall be complete.

19.     Ms. Baker has other claims for which the statute of limitations is not tolled while her Title VII claims are under investigation.

20.     Ms. Baker intends to move to amend her Complaint to include Title VII violations as soon as she administratively exhausts, and her Complaint describes those claims so that they may all be resolved efficiently in one venue.

## FACTUAL ALLEGATIONS

### Ms. Baker's Dedication to the Kingsland Library and Beyond

21.     Ms. Baker's life journey is a rich tapestry of service, dedication, and a deep love for literature and community. Born and raised in Texas, Ms. Baker spent time in the Army as a diesel mechanic, a position that instilled in her a sense of discipline, duty, and a passion for the constitutional rights of Americans, traits that would shape her approach to life's challenges.

22.     After her military service, she pursued higher education at Pikes Peak Community College.  In Colorado, she spent much of her adult life and raised her five children.

23.     While raising her children in Colorado, Ms. Baker found fulfillment in serving her community. She volunteered at the local homeless shelter, food pantry, and at the Penrose Library in Penrose, Colorado, where she dedicated nearly a decade to nurturing young minds.

24.     While volunteering at the Penrose Library, Ms. Baker discovered her true calling as a librarian. She organized innovative programs for older children and teenagers, empowering them to explore their creativity and develop valuable skills. One of her favorite programs was the quilting program she initiated, where she taught eleven to eighteen-year-olds to sew quilts that still hang on the library's walls today.

25.     In August 2016, Ms. Baker returned to her roots in Texas where she desired to enter the career of librarianship.

26.     Soon an opportunity arose for a librarian position and Ms. Baker was hired part-time as the Young Adult ("YA") librarian at the Kingsland Library, a branch which operates under the umbrella of the Llano County Library System.

27.     The Llano County Library System is comprised of three physical libraries: the Main Llano Library, Kingsland Library, and Lakeshore Library.

28.     During her two-year tenure as a YA librarian at Kingsland Library, Ms. Baker strived to foster a love for reading and learning amongst her young patrons.

29.     In March 2020, the Llano County Library System recognized Ms. Baker's hard work and commitment by appointing her Head Librarian of the Kingsland Library. Leading with integrity and passion, she embraced her new role with enthusiasm, eager to continue serving her community in this capacity.

30.     As Head Librarian, Ms. Baker managed the location and reported to the Llano County Library System Director, Defendant Amber Milum.

31.     Among her responsibilities, Ms. Baker chose materials for the Kingsland Library, submitted her selections to Defendant Milum for purchase, and then added the new materials into the system for circulation.

32.     This process involved considering the community demographics, patron requests, best seller lists, and the existing collection.

33.     Everything in her new position proceeded smoothly for the first few months of her tenure, but that was all about to change as the Llano County Library System found itself the target of a frenzied political movement promoting suppression and censorship.

6

**Llano County Commissioners Attempt to Censor Books They Deem "Inappropriate"**

34.     During the 2022-23 school year nearly 1,600 unique book titles were banned from public schools and libraries in the United States, continuing the startling rise documented by PEN America and other organizations in the past two years.[2]  This surge in book bans is attributed to coordinated efforts by reactionary advocacy groups targeting LGBTQ+ and racially diverse content.[3]

35.     The American Library Association ("ALA") reports that between January 1, and August 31, 2023, there were 695 attempts to censor library materials and services, documenting challenges to 1,915 unique titles—a 20% increase from the same reporting period in 2022, which marked the highest number of book challenges in over two decades.[4] This alarming trend is particularly focused on young adult books dealing with race, gender, and sexual identity.[5]

36.     The issue of book bans arrived in Llano County, Texas, during the summer of 2021 when Defendants launched a coordinated censorship campaign aimed at removing and restricting access to books that challenged their personal, political, and religious beliefs.

37.     Around that same time, a faction in the community, including Defendants Gay Baskin, Rhonda Schneider, Bonnie Wallace, and Rochelle Wells, agreed to pursue the common goal of unlawful censorship by demanding that Llano County librarians remove specific books

---

[2] The highest number of book bans—more than forty percent—took place in Florida, and nearly twenty percent occurred in Texas. *See* Pen America, *Banned in the USA: The Mounting Pressure to Censor*, https://pen.org/report/book-bans-pressure-to-censor/. Notably, this data only includes those books publicly registered as banned. The actual number is far larger, and does not include books that have been removed from library shelves without centralized, publicly available reporting.
[3] Andrew Limbong, *New Report Finds a Coordinated Rise in Attempted Book Bans*, NPR, https://www.npr.org/2022/09/19/1123156201/new-report-finds-a-coordinated-rise-in-attempted-book-bans.
[4] American Library Association, *Book Ban Data*, https://www.ala.org/advocacy/bbooks/book-ban-data.
[5] *Id*.; *see also* Limbong, *supra* note 4.

from the children and teen sections of the library based on their personal view that the books were "inappropriate."

38.     Ms. Baker opposed the request and emailed Defendant Milum, explaining that she believed the librarians should instead "counter with information on how to effectively see what their children are doing and on how to choose books."

39.     On or around October 18, 2021, Defendants Moss and Milum met to discuss rumors that Defendant Milum might lose her job for not yielding to the demands to remove books. Defendant Milum left that meeting with Defendants Moss and Cunningham understanding that her job was "not in jeopardy," and instead that they were glad she was "working on the improvements we spoke about," referring to the removal of the books.

40.     It was made clear to Defendant Milum that her continued employment was conditioned on her compliance with the Defendants' agenda of discriminatory censorship.

41.     On or around October 25, 2021, Texas State Representative Matt Krause sent a letter to the Texas Education Agency and several school district superintendents. In the letter, he listed 850 books, referred to as the "Krause List," which consisted of titles he personally or politically disliked. He further requested the school districts identify other books that "contain material that might make students feel discomfort, guilt, anguish, or any other form of psychological distress because of their race or sex," and to respond to his request by November 12, 2021.[6]

---

[6] Bill Chappell, *A Texas lawmaker is targeting 850 books that he says could make students feel uneasy*, NPR (Oct. 28, 2021), https://www.npr.org/2021/10/28/1050013664/texas-lawmaker-matt-krause-launches-inquiry-into-850-books.

42.     Shortly thereafter, Defendants Wallace and Wells, with approval of Defendants Baskin and Schneider, examined the Llano County Library System's book collection to identify which titles from the Krause List were present in the library.

43.     On behalf of Defendants Baskin, Schneider, and Wells, Defendant Wallace then created a spreadsheet (hereinafter, "Bonnie Wallace Spreadsheet"), in which she identified books available through the Llano County Library System's collection that were on Representative Krause's list and alleged to contain "pornographic filth."

44.     These books, which Defendant Wallace labeled "pornographic," largely centered around the experiences of LGBTQ+ people.[7]

45.     Other titles on Defendant Wallace's list of "pornographic" books were about "critical race theory" and related to experiences of people of color or were authored by the same.[8]

46.     On November 5, 2021, Defendant Milum emailed Ms. Baker about the importance of librarians watching what they say because Defendant Schneider was "going door to door and building an army." She also instructed Ms. Baker, who pointed out the problems with removing

---

[7] Such campaigns resemble tactics employed by known hate groups. In 2022, for example, the Proud Boys, a white supremacist organization known for its militant opposition to LGBTQ+ individuals, "joined or led" fifty-three anti-LGBTQ+ protests in eighteen states to "protect kids." They held signs stating, "[i]f you won't fight for your kids we will!," "groom dogs, not kids," and "Leave the kids alone." In July 2022, the leader of the National Social Club, another white supremacist organization, was arrested outside a drag story hour event in Boston after a group of about twenty shouted anti-LGBTQ+ slurs at attendees. *See* Laura Italiano, *The Proud Boys crashed my story hour: A drag king recounts a joyful but 'terrifying' showdown at a NYC library*, BUSINESS INSIDER (Feb. 7, 2023), https://www.businessinsider.com/proud-boys-crashed-story-hour-a-drag-king-account-2023-2; Conor Murray, *Drag Story Hours Spark Angry Anti-LGBTQ Rallies – Latest In NYC Included Proud Boys*, FORBES (Mar. 21, 2023), https://www.forbes.com/sites/conormurray/2023/03/21/drag-story-hours-spark-angry-anti-lgbtq-rallies-latest-in-nyc-included-proud-boys.

[8] Such modes of censorship have widely recognized deleterious impacts on minority communities. Robbing communities of access to voices, information, and learning related to their identity, history, and culture is a destructive tactic sometimes referred to as ethnocide. Commingling it with notions of a superior, true, ideological cannon of literature fueled the heart of the notorious book-burning frenzies of Nazi Germany and has been identified at periods of time in the United States as well. *See generally* Lily Rothman, *The Real Story Behind Book Burning and Fahrenheit 451*, TIME (May 18, 2018), https://time.com/5272968/fahrenheit-451-book-burning-history/.

these books, including her First Amendment concerns and the seemingly discriminatory pattern of the removals: "we are putting a positive spin on all of our changes. We are not saying why we are doing it we are just pointing out the positives of the changes and how helpful they are to our patrons."

47.     Defendant Milum's email to Ms. Baker conveyed that Defendant Schneider and others were conspiring to deprive individuals equal protection under the law by engaging in discriminatory censorship efforts.

48.     Defendant Milum also expressed her expectation that Ms. Baker would support such efforts despite their unlawfulness.

49.     On November 8, 2021, Defendant Cunningham emailed Defendant Milum and explicitly outlined one immediate action item and its retaliatory consequence: "1. Any books with photos of naked or sexual conduct regardless if they are animated or actual photos are to be pulled until further notice. 2. No additional books will be ordered or purchased until we have a plan to move forward."

50.     Around that same time, Defendant Cunningham ordered new material purchases to be suspended indefinitely.

51.     Two days later, on November 10, 2021, Defendant Wallace, copying Defendants Baskin, Schneider, and Wells, emailed Defendant Cunningham, with the subject line "Pornographic Filth at the Llano Public Libraries." In the email, she requested relocation of certain books intended for children and teens to a segregated shelf in the adult section of the library.[9]

---

[9] Recognizing the adverse impact, courts have long recognized that segregating books based on content results in constitutional harms and real suffering to those wishing to access them, stigmatizing both the literature and patron. Indeed, according to a Texas district court decades ago discussing the segregation of books for minors with LGBTQ+ themes, "[t]he constitutional injury that Plaintiffs will suffer as a result of the continued enforcement of the Altman Resolution—including the continued segregation of the

10

52.     Defendant Wallace admitted to knowing this restriction based on personal beliefs constituted censorship and argued that relocating the books to the adult section of the library was "the only way that I can think of to prohibit future censorship of books I do agree with, mainly the Bible, if more radicals come to town and want to use the fact that we censored these books against us."

53.     That same day, Defendant Cunningham forwarded the Bonnie Wallace Spreadsheet to Defendant Milum and directed her to immediately remove "all books that depict any type of sexual activity or questionable nudity" and then inform Defendants Cunningham and Don Moss when she had completed the task.

54.     The list contained approximately sixty books.

55.     On November 11, 2021, Defendant Wells, in coordination with Defendants Baskin, Schneider, and Wallace, emailed thirty-six individuals with an update on the progress of their efforts to censor "CRT and LGBTQ books" and next steps. Defendant Wells wrote that Defendants Cunningham and Moss had already:

> instructed Amber [Milum], the head librarian, to remove certain books . . . There will also be no new books coming in until this is settled . . . Amber was told to get rid of <u>Lawn Boy</u> and <u>Gender Queer</u> (physical and ebook). Commissioner Moss, we are very grateful for your help in this situation and all you have done to begin to remedy it! Chris Jones has combed through that 16-page list of CRT and LGBTQ book[s] to see which we have in Llano County libraries . . . We will be sending a list of the ones we found to be inappropriate, along with a summary, to Commissioner Moss.

56.     The next day, Defendant Milum assured Defendant Cunningham of her active participation in the effort to censor "CRT and LGBTQ books," "I am in shock! . . . I would never

---

censored Books—far outweighs any possible harm to the Defendants if the Resolution is enjoined and the Books remain in the children's section of the Library. Without a permanent injunction, the Plaintiffs will suffer irreparable injury to their constitutional rights." *Sund v. City of Wichita Falls, Tex.*, 121 F. Supp. 2d 530, 553–54 (N.D. Tex. 2000).

purchase a book like that for the libraries. We are all working on getting books pulled. I will also work on the lists that [Defendant Wallace] provided."

57.     Defendant Milum edited the Bonnie Wallace Spreadsheet by adding the books' author, call number, branch location, and the name of the librarian who purchased the book. This was intended to simplify the identification of the books and expediate their removal from the shelves.

58.     Defendant Milum sent an email to Ms. Baker, attaching the edited Bonnie Wallace Spreadsheet and instructing her to remove all the books listed in the spreadsheet that were currently available at the Kingsland Library.

59.     Ms. Baker disagreed with Defendant Milum's request to remove books based on their subject matter, content, views, and authorship.

60.     Ms. Baker opposed the request, arguing that removing the books would constitute illegal censorship.[10]

61.     Ms. Baker requested that Defendant Milum consult the Llano County Attorney's Office because she believed that the directive to remove the books was unlawful and violated the First Amendment rights of Kingsland Library patrons.

---

[10] Within the last year, courts around the country have been issuing injunctions consistent with Ms. Baker's layperson assessment that the First Amendment protects access to literature in libraries and prohibits the censorship of disfavored books. *See, e.g., Fayetteville Pub. Library v. Crawford Cnty., Arkansas*, 5:23-CV-05086, 2023 WL 4845636, at *19-21 (W.D. Ark. July 29, 2023) (enjoining enforcement of new state law that criminalized furnishing "harmful" materials to minors and requiring libraries to challenge books in their collections deemed inappropriate for minors decrying a local governing body's decision to essentially strip the shelves of books espousing unpopular or minority viewpoints as a clear violation of the First Amendment and noting that "an individual has the 'right to read or observe what he pleases,' and that right is 'fundamental to our scheme of liberty' and cannot be restricted.") (internal quotations omitted); *GLBT Youth in Iowa Sch. Task Force v. Reynolds*, 4:23-CV00474, 2023 WL 9052113, at *26 (S.D. Iowa Dec. 29, 2023) (enjoining enforcement of a law that required local schools to remove books from libraries deemed not age-appropriate and banning programming or instruction relating to gender identity and sexual orientation).

62.     Ms. Baker firmly opposed censorship and adamantly refused to participate in it.

63.     She also noted the content of the books, and indicated she opposed their targeting and removal throughout this time.

64.     In fact, when Ms. Baker noticed that Defendant Milum had removed an anthology about systemic racism titled *Critical Race Theory* (3rd Edition), from the shelf in the adult non-fiction section of the library at the Kingsland Library and hid it behind the front desk, she promptly returned the book to its original place on the shelf.

65.     Defendant Milum alerted Defendant Cunningham that she had hidden the book behind the Kingsland Library's front desk. In an October 28, 2021, email, Defendant Milum stated her intent of alerting him "before it came up in any of [his] meetings." She went on to assure him, "The book is still in the system but it is behind the front desk. If anyone wants to check it out they have to ask a librarian. It is no longer on the shelf."

66.     Upon Ms. Baker's later review of "Deleted Holdings" from the Llano County Library System's record of books removed in 2021, Defendant Milum illegally "weeded" at least seventeen books in July, August, October, and November of 2021.

67.     Pursuant to the Llano County Library System's standard weeding procedures, materials are removed twice a year, in February and August. This process is based on objective criteria like publication date, last circulation date, and physical condition.

68.     Weeding outside of these scheduled periods, termed "big weeds," only occurs under exceptional circumstances, such as when an item is returned damaged.

69.     According to the official Llano County Library System policy, nonfiction books are considered eligible for weeding if they have not been checked out for five years, are outdated, or are in poor condition.

70.     Fiction books are eligible if they have not been checked out for three years or are in poor condition.

71.     Ms. Baker observed, aside from one book, all other books on the list provided by Defendant Milum were removed unlawfully due to their content, rather than following the proper weeding process.

72.     For example, two children's books, *I Broke My Butt* and *My Butt is So Noisy* by Dawn McMillan were added to the Llano County Library System in June 2021 and had already been checked out four times—meaning they were popular and not subject to the established weeding criteria.

73.     On October 4, 2021, Defendant Milum provided Commissioner Moss "a little more info" about the above book removals to prepare him for a meeting: "I spoke with you <u>on August 3rd</u> and I removed the book, My Butt is so Noisy!, from the shelves and the system <u>on August 5th</u>, and once I Broke my Butt was returned by Rochelle Wells I deleted it from the system <u>on August 9th</u>."

74.     In that same email, Defendant Milum admitted to Commissioner Moss that "with everything that went on" she purchased, but never even put the following books, on the shelves: *I Need a New Butt* by Dawn McMillan, *Larry the Farting Leprechaun*, *Harvey the Heart Had Too Many Farts*, *Gary the Goose and His Gas on the Loose*, and *Freddie the Farting Snowman*, all by Jane Bexley.

75.     Defendant Milum's email offered reassurance to Defendants Moss and Cunningham that she was adhering to their directives and censuring books as per their request.

76.     To "weed" a book that has been purchased but before it has ever been placed in circulation is aberrant operating procedure or practice in the Llano County Library System.

77.     As another example of deviation from standard operating procedure, the Llano County Library System acquired the adult non-fiction book *They Called Themselves the KKK: The Birth of an American Terrorist Group*, by Susan Campbell Bartoletti, in May 2011. The book was last checked out in August 2011. Ms. Milum made the decision to "weed" the book on November 12, 2021. Despite its low circulation, the book was the sole resource in the system offering the history of the KKK. According to established criteria at the Llano County Library System, the uniqueness and importance of the book's subject matter made it ineligible for removal during a typical weeding process.

78.     At that time, out of the 67,000 materials in the Llano Library system, more than 500 had not been borrowed since 2010. For example, a book called *Teach Yourself Microsoft PowerPoint 2000 Visually* had not been borrowed since 2003 and *The Magic School Bus and the Electric Field Trip* was last checked out in 2000. However, Defendant Milum did not weed out such books and chose only to concentrate on the books listed on Defendant Wallace's list for purging.

79.     Moreover, given the Library System's decision to suspend all new acquisitions in October 2021, Defendant Milum's "weeding" of books wasn't aimed at creating space for new books, but rather at censoring and removing books from shelves that didn't align with the religious, personal, and political perspectives of the Defendants.

80.     On December 2, 2021, with help from Defendants Baskin, Schneider, and Wallace, Defendant Wells emailed an update of the Commissioners' successes, future plan, and coordination with Defendant Moss to about twenty individuals. In the email, Defendant Wells referred to Defendant Moss as a "God-send!!" and asked the recipients to thank him. She stated that he would be leading the discussion on the following three topics: 1) suspending OverDrive

because *Gender Queer* and *Lawn Boy* were available there; 2) closing the library for three days entirely devoted to removing those books that contain pornographic content; and, 3) appointing a new Library Advisory Board "solely for the purpose of revamping the policy and procedure for the library."

81.     Indeed, at the December 13, 2021, meeting of the Llano County Commissioners Court, the Commissioners discussed those topics and unanimously voted to suspend OverDrive, close the Llano County Library System to the public for three days, and restructure the library board with recommended appointments for the new library board to be presented on January 10, 2022.[11]

82.     Defendant Milum explained the decision to suspend OverDrive to the Llano County Library System's OverDrive Account Manager, Jim Monastra, in an email on Monday, December 13, 2021: "Our Commissioner's Court has decided to suspend our Overdrive subscription at this time. We have a group of concerned patrons worried about the book Gender Queer being seen by children."

83.     On December 14, 2021, Defendant Wells emailed multiple community members advising them that the Library System would be closed for several days before Christmas to

---

[11] The desire to deprive an entire community of a valuable public resource for no reason other than animus against a protected class is reminiscent of the battles to desegregate schools. The governor of Arkansas, Orval Faubus, shuttered Little Rock schools for a year rather than integrate them. John Kirk, *Sixty years ago, Little Rock closed all its public high schools rather than desegregate them*, ARKANSAS TIMES (Sept. 13. 2018), https://arktimes.com/news/arkansas-reporter/2018/09/13/sixty-years-ago-little-rock-closed-all-its-public-high-schools-rather-than-desegregate-them; *see* University of Arkansas Libraries, https://libraries.uark.edu/specialcollections/research/lessonplans/FaubusSpeechLessonPlan.pdf (excerpts from original speech by Faubus closing the school). Similarly, some municipalities chose to drain their public swimming pools rather than integrate. *See Palmer v. Thompson*, 403 U.S. 217 (1971). In this case, after a federal district court required Llano County Library System to reshelve the books, discussed *infra*, the Defendant Commissioners nearly shut down the entire Llano County Library System permanently. *See* William Melhado, *Llano County library supporters declare victory as officials decide not to close all branches*, TEXAS TRIBUNE (Apr. 13, 2023), https://www.texastribune.org/2023/04/13/llano-county-library-books/.

remove books. Defendant Wells solicited and urged the recipients to visit the libraries in January of 2022 to confirm that the books enumerated in the 16-page Bonnie Wallace List had in fact been purged. At no point in the email did Defendant Wells limit her instructions to books purged from the children's sections of the library branches.

84.     Unsatisfied with even these drastic efforts to censor, the Defendant Commissioners ordered the complete closure of the Llano County Library System to the public between December 20-22, 2021, setting those days aside for librarians to label and check the shelves for purportedly "inappropriate" books.

85.     They made the decision because of their concern over so-called potentially "inappropriate" books lingering in the library's children's and teens' sections. The Commissioners determined that it was necessary to conduct a thorough review of all the books employing an unspecified and subjective standard of "appropriateness."[12]

86.     Defendant Commissioners also unanimously voted to suspend access to digital materials through the Library System's online platform called OverDrive because the platform provided access to books that the Commissioners considered "inappropriate."[13]

87.     At the beginning of January 2022, Defendants Cunningham, and Moss pushed forward in their efforts to reshape the Llano County Library System according to their own personal, political, and religious beliefs. They voted to dissolve the existing Library Board and

---

[12] As the Fifth Circuit has held, "[o]fficial censorship based on a state actor's subjective judgment that the content of protected speech is offensive or inappropriate is viewpoint discrimination." *Robinson v. Hunt Cnty., Texas*, 921 F.3d 440, 447 (5th Cir. 2019).

[13] Alongside its physical collection, the Llano County Library System offers patrons access to digital materials through OverDrive, of particular importance to library patrons with disabilities who are unable to get themselves to a physical library branch to check out materials. The Llano County Library System's suspension of access to digital materials lasted for nearly five months. It was not until May 9, 2022, that access to another electronic collection, Bibliotheca, was made available.

create the "New Library Board," later renamed the "Library Advisory Board" (hereinafter, the "New Board").

88.     The New Board consisted only of members from the community's pro-censorship faction, including Defendants Baskin, Schneider, Wallace, and Wells (collectively, the "New Board Defendants").

89.     On January 19, 2022, the New Board elected Defendant Baskin as its Chairperson, Defendant Wallace as its Vice Chair, and Defendant Wells as its Secretary.

90.     Concerned that widespread censorship would now become the norm in the Llano County Library System, Ms. Baker attended that meeting.

91.     These New Board Defendants, previously known for their vocal support of censorship within the community, were now appointed to official governmental positions that vested them with direct authority to censor disfavored content and to formulate, recommend, implement discriminatory policies, and they fully expressed the intent to use their newfound powers to do so.

92.     Later that day on January 19, 2022, Defendant Wells emailed "highlights" to Defendant Moss describing the meeting in which Defendants Baskin, Wallace, and Wells were elected to their respective positions. Defendant Wells expressly thanked Defendant Moss for asking Defendant Milum to "remove *It's Perfectly Normal!*"

93.     In the email, Defendant Wells also asked Defendant Moss to "persuade" Defendant Cunningham to close meetings, in seeming violation of the Texas Open Meetings Act (Government Code chapter 551), because patrons were present and taking notes. She indicated that the New Board wanted to keep the meetings closed and only include "appointed board members" and Defendant Milum on an as-needed basis.

94.     The New Board Defendants came to an agreement by words and conduct with Defendants Cunningham, other County Commissioners, Milum, and Moss, that they would carry out a coordinated effort to purge books (and not purchase new ones) on the basis of disfavored content or authors; threaten, intimidate, and chill anyone who opposed their agenda; and publicly stigmatize, discriminate, and retaliate against members of or allies of communities of color and the LGBTQ+ community, estranging them from the libraries.

95.     As part of that agreement, Defendants Llano County Commissioners Court, Cunningham, and Moss tasked the New Board with revising current library policies regarding book collection and removal and presenting the policies and procedures for final approval.

96.     The New Board complied with the task and instituted a policy that all new books must be presented to and approved by the New Board before purchase.

97.     The New Board held their first meeting on January 24, 2022, in Llano.

98.     This meeting was open to the public and Ms. Baker attended this meeting as a private citizen and not in her capacity as the Head Librarian of Kingsland Library.

99.     The following day, January 25, 2022, Ms. Baker attended a Friends of the Library meeting, the 501(c)(3) wing of the Kingsland library. In her capacity as the Head Librarian, Ms. Baker typically attended these monthly meetings to report on finances, statistics, and programming at the branch. Although she did nothing out of the ordinary with her presentation that day, Defendant Baskin, who sat on the organization's board, falsely accused Ms. Baker of making a great disturbance.

100.    On January 31, 2022, Ms. Baker attended the Bylaws Committee meeting at the Kingsland Library. This Bylaws Committee was established to draft bylaws for the New Board.

101.    The meeting was open to the public.

102.     Ms. Baker was not working that day and attended the meeting as a private citizen and not in her capacity as the Head Librarian of Kingsland Library.

103.     Defendant Baskin questioned Ms. Baker about why she was at the meeting on and asked if Ms. Baker had permission from Defendant Milum to be present at the meeting.

104.     Ms. Baker told Defendant Baskin that she was concerned about the censorship efforts of the New Board and the impact it would have on her ability to access books as a member of the community served by the Llano County Library System.

105.     On February 1, 2022, Defendant Milum informed Melissa MacDougall, Head Librarian of the Lakeshore Library, that she "was hoping we were going to be able to purchase [new books] soon . . . and then I received a phone call telling me we are not to add anything into the system or remove anything from the system until the advisory board by-laws are in place and the policies are updated."

106.     Defendant Milum's reference to new by-laws referred to official policies enabling the Llano County Library System to censor subjectively disfavored content and impose the personal, political, and religious views of the New Board on the entire community, suppressing access to minority opinions and ideas. Rather than oppose the directive that she received from the New Board, Defendant Milum agreed and conspired to carry out the unconstitutional plan to censor and discriminate based on viewpoint.

107.     In furtherance of Defendants' agreement, on February 9, 2022, Defendant Milum issued a written reprimand to Ms. Baker for attending the Friends of the Library meeting on January 25th, accusing her of insubordination, and excoriating her for letting her "personal opinions" interfere with her job duties and procedures.

108.     Another New Board meeting was held on February 10, 2022, at Kingsland Library. This meeting was also open to the public and almost 100+ community members attended that meeting along with Defendant Milum and Ms. Baker.

109.     Again, in furtherance of Defendants' agreement, on February 16, 2022, Defendant Milum emailed Ms. Baker and the other Llano County librarians, instructing them that they were prohibited from attending the New Board's public meetings.

110.     Defendant Milum went as far as to email all the librarians to warn them that the directive came from higher up, quoting Judge Cunningham who expressly prohibited the librarians from using personal or vacation leave time to attend any meetings. Only Defendant Milum was allowed to attend the meeting on an as-needed basis.

111.     Defendant Cunningham's directive was in direct response to Ms. Baker attending the January 24, 31 and February 9 meetings as a private citizen.

112.     In mid-February, Ms. Baker erected a sign on the marquee in front of the Kingsland Library that read, "we put the 'lit' in literature," a double entendre referring to 'lit' as both the slang word for fun, and to the historical burning of books.



*Marquee in front of the Kingsland Library.*

113.   Inside the Kingsland Library, Ms. Baker set up a display of books next to a sign that said, "Come check out our 'lit' books!" Many of the books that were put on display were historically the subject of book bans and burns and covered topics such as race, sexuality, gender, national origin, and discrimination based on these minority statuses.

114.   The books on display included an assortment of historically banned books such as: *To Kill a Mockingbird* by Harper Lee, *How to be an Anti-Racist* by Ibrahim X. Kendi, and *Between the World and Me* by Ta-Nehisi Coates, three books with racial themes discussed or explored therein.

115.   Ms. Baker shared pictures of the display and the sign on the Kingsland Library's Facebook page.

116.    The next day, Defendant Milum visited the Kingsland Library and ordered Ms. Baker to remove both the "lit" message from the signage outside and the book display itself, as well as to delete the corresponding post from Facebook.

117.    Defendant Milum further instructed Ms. Baker to remove all the books listed on the Bonnie Wallace Spreadsheet from the display and to replace the sign for the remaining books and re-title it, "The Classics."



*"Classics" display inside the Kingsland Library.*

118.    On March 3, 2022, the New Board closed the meetings off from the public in seeming violation of the Texas Open Meetings Act.

119.   On March 9, 2022, Defendant Milum fired Ms. Baker for "insubordination," "creating a disturbance," "violation of policies," "failure to follow instructions," and "allowing personal opinions to interfere with job duties and procedures."

120.   Defendants Cunningham, Moss, Wallace, Wells, Schneider, and Baskin were the sources of many of the concerns listed against Ms. Baker.

121.   Defendants Cunningham, Moss, Wallace, Wells, Schneider, and Baskin collectively planned, authorized, and supported the termination.

122.   Because of Ms. Baker's words and actions against censorship throughout this period, Defendant Wallace supported Ms. Baker's termination and publicly criticized Ms. Baker as engaging in illegal activity.

123.   Because of Ms. Baker's words and actions against censorship throughout this period, Defendant Baskin supported her termination and called Ms. Baker a liar and blamed her for causing disturbances.

124.   Defendant Milum terminated Ms. Baker's employment in furtherance of the agreement with Defendants Cunningham, Moss, Wallace, Wells, Schneider, and Baskin to censor and discriminate against people of color and the LGBTQ+ community and their allies.

125.   Between October 2021 and the date of Ms. Baker's termination, Defendants' agreement did not result in the purchase of *any* new books for the Llano County Library System's collection.

**Llano County Library System Patrons Take Legal Action Against Censorship**

126.   In the aftermath of Ms. Baker's termination, local community members of the Llano County Library District sought an injunction against the censorship and removal of books relating to race, gender, national origin, sexuality, and other themes.

24

127.    In April of 2022, community members filed the lawsuit, *Little et al. v. Llano County et al.,* 1:22-cv-00424-RP (W.D. Tex. 2022), against many of the same Defendants in this case.

128.    On March 30, 2023, the federal district court in *Little* ruled that Defendants' removal of books constituted unlawful viewpoint discrimination under the First Amendment and amounted to the unlawful deprivation of patrons' liberty interest in accessing the library.

129.    The Court determined that Defendants "removed the books at issue to prevent access to viewpoints and content to which they objected."

130.    The Court in *Little* issued a preliminary injunction requiring County officials to return all print books, including seventeen identified titles, to the library shelves that had been removed, and to refrain from removing any other books while the litigation continued.

131.    Rather than comply with the preliminary injunction, Defendants created a secretive checkout system at the Llano Branch library. The checkout system allows patrons to check out some of the removed books, but only by going to a little-known back room where those books are stored. The continuing availability of some of these removed books is not advertised or made known to the public, or available through other means of ordering books from the Llano County Library System.

### The Testimony in Those Proceedings Revealed Defendants' Overwhelming Discriminatory Animus and Knowledge of First Amendment Violations

132.    The impact of the legal proceedings in *Little* went beyond the issuance of a preliminary injunction. The proceedings highlighted Defendants' broad-sweeping animus towards protected activities and classes—the same animus that fueled their coordinated, wrongful conduct in this case.

133.    During a hearing on October 28, 2022, witness Martina N. Castelan, the former Head Librarian at Llano County Library System stated that the usual process for ordering books

for the library had changed in October of 2021, less than eight months after Defendant Milum became Director.

134.    Prior to October of 2021, Defendant Milum had never disapproved of any books Ms. Castelan wanted to order, unlike her mandate prohibiting the purchase of any further books for the library.

135.    Defendant Milum and Ms. Castelan testified that, originally, it was Milum who had ordered *My Butt is So Noisy*, *I Broke My Butt*, and *I Need a New Butt*, because she found them age-appropriate and funny for children.

136.    Based on Ms. Castelan's experience as a Head Librarian she assessed these books to be age appropriate and found no cause for concern regarding their content.

137.    Defendant Milum testified that according to the current policy of the Llano County Library System the "[r]esponsibility for the reading of children rests with their parents or legal guardians. Selection should not be inhibited by the possibility that media may inadvertently come into possession of children."

138.    She also testified that, "no parent has the authority in a library system to control what somebody else's children read."

139.    Defendant Milum testified that despite the policy, she removed the books *My Butt is So Noisy*, *I Broke My Butt* and *I Need a New Butt* because Judge Cunningham and Commissioner Moss instructed her to do so.

140.    According to Ms. Castlen, the weeding process typically occurred in August, but in November of 2021, Director Milum excised books such as *Shine* by J.J. and Chris Grabenstein, *Freakboy* by Kristin Elizabeth Clark, and *Caste* by Isabel Wilkerson and Robin Miles, all books with LGBTQ+ or racial/ethnic themes. Typically, once books are removed from the shelves by the

Library System, an antique store comes to pick up the books and resells them. However, instead of allowing these deaccessioned books to be sold at the antique store, Defendant Milum instructed Ms. Castelan that the books were not to be made available to the community for resale.

141.    Ms. Castelan testified that in early 2022 the book ordering process changed. For the first time, any books that were ordered and purchased had to be approved by the New Board who had the power to veto or reject a book order.

142.    Defendant Milum also testified that Defendant Cunningham told her to remove any books that depicted nudity or sexuality, and in November of 2021, he directed her not to purchase any more books until further notice.

143.    Despite being a popular children's book and receiving no complaints about the book's subject matter, Defendant Milum admitted to removing *In the Night Kitchen* by Maurice Sendak because of its content.

144.    Defendant Milum also admitted that Defendant Cunningham emailed her the Krause list which contained a number of books that deal with LGBTQ+ themes and other disfavored topics.

145.    Defendant Milum testified that Defendant Cunningham also told her to remove *How to be an Anti-Racist*, a book about systemic racism, from the bookshelves and sequester it behind the desk so patrons would have to ask the librarian for the book.

146.    Defendant Milum admitted that, on November 12, 2021, pursuant to the Bonnie Wallace List and at the behest of Judge Cunningham, she removed *Freakboy*, *Shine*, *Caste: The Origins Of Our Discontents*, *They Called Themselves the KKK: The Birth of an American Terrorist Group*, and *Spinning* by Tillie Walden, and *Being Jazz: My Life As A Transgender Teen* by Jazz Jennings, all books with racial or LGBTQ+ themes and authors.

147.    Defendant Milum also admitted that she did not pull or remove any books that were not on that list.

148.    Defendant Milum testified that once these books were removed from public access, she instructed librarians to sequester them behind the front desk and out of the sight of patrons. The only way a patron would know one of these books might be available for checkout was if "they were reading the papers in this lawsuit."

149.    Defendant Milum admitted that the Llano County Library System had previously celebrated Banned Book Week, which lauds the availability of books, regardless of what people's opinions are of the books. She further testified that the original motivation behind Banned Books Week was to celebrate freedom of information and the First Amendment, including the value of historically banned books.

150.    However, Banned Book Week has been canceled at the Llano County Library System since the inception of the New Board.

151.    Defendant Cunnigham testified that prior to the summer of 2021, he had never communicated with library staff about books that he believed to be inappropriate, and never questioned the collection policy at the Llano County Library System.

152.    Defendant Cunningham also testified that prior to the summer of 2021, the County Commissioners Court appointed members of the Library Board for a term, and then renewed or replaced that Board member after his or her term ended. Furthermore, prior to the summer of 2021, County Commissioners replaced Board Members only one at a time.

153.    Defendant Cunningham further confessed that on January 10, 2022, in a Llano County Commissioners' Court meeting that Commissioners voted to create and restructure the Llano County Advisory Board, and that right after that the Commissioners appointed Defendant

Wallace to the New Board notwithstanding her "pornographic filth" email.  At the same time, the County Commissioners Court removed Rick Day who had a master's degree in library science and was also the custodian of the University of Texas' classic library.

154.    Commissioner Moss testified that over his fifteen-year tenure as a commissioner he had rarely received complaints about a book. He further stated that prior to the summer of 2021, he had not received any complaints about the content of any books in the Llano County Library System.

155.    Defendant Wells testified that in 2018, she came across three books that she did not want her children to read. She admits she did not challenge or seek removal of those books at that time.

156.    Defendant Wells testified that she first asked Defendants Milum, Cunningham, and Moss to purge certain books in 2021.

157.    Defendant Wells testified that, after she made that request, Commissioner Moss appointed her to the Llano County Library Advisory Board without her having to submit an application.

158.    Defendant Wells further testified that she checked out certain books at various times not because she wanted to read them, but because she wanted to "protect children from being molested." She testified that by censoring these books, she was protecting children from "rape."

159.    Defendant Wells specified that she checked out the book *My Butt is so Noisy* to "protect children from being molested."

160.    Defendant Wells stated that she opposed books "about CRT" because they "pitted races against each other," and because she did not think it was "appropriate to have books where one child thinks he's better than another because of this skin tone."[14]

161.    Defendant Wells expressed concern about CRT and LGBTQ+ books at the Llano County Libraries due to the alleged harm they posed to children. However, her email to community members about censoring these books never limited her concerns in such a manner, particularly not just to that of books found in the children's section of the library.

162.    In fact, when questioned about whether the 16-page list of CRT and LGBTQ+ books consisted solely of children's books, Defendant Wells admitted that she did not know, suggesting that her professed concern about "children" was pretext for her animosity towards their content.

163.    In fact, many of the books the Defendants removed, such as *Caste: The Origins of our Discontent, They Called Themselves the KKK: The Birth of An American Terrorist Group* and *Spinning* are all books for adults and were never in the children's section.

---

[14] Censoring racial themes in literature harkens back to battles against desegregation. For example, segregationists with the Montgomery, Alabama chapter of the White Citizens' Council ("WCC") in the Jim-Crow South challenged *The Rabbits' Wedding*, a children's picture book in which a white rabbit and a black rabbit get married because it promoted racial integration. White segregationists created WCC chapters throughout the South to counter civil rights goals with violence, intimidation, and social and economic oppression after the 1954 U.S. Supreme Court decision in *Brown v. Board of Education* to desegregate schools. *See* Erin Blackemore, *The history of book bans – and their changing targets – in the U.S.*, NATIONAL GEOGRAPHIC (Apr. 24, 2023), https://www.nationalgeographic.co.uk/history-and-civilisation/2022/09/the-history-of-book-bans-and-their-changing-targets-in-the-us; The Martin Luther King, Jr. Research and Education Institute, STANFORD UNIVERSITY, (last visited Feb. 27, 2024), https://kinginstitute.stanford.edu/white-citizens-councils-wcc.

**Censorship at Llano County Library System Continues Despite Court Order**

164.    In January of 2023, Defendants' coordinated effort to remove books by and about people of color, members of the LGBTQ+ community, and other disfavored topics expanded from the Llano Public Library System to the libraries found in the county's public schools.

165.    Defendant Wallace coordinated a letter asking Texas Governor Greg Abbott to make "eliminating pervasively sexual materials in school libraries an emergency item for the 88th Legislature," because of the "alarming discovery of pornographic, pervasively vulgar and other sexually explicit materials in our taxpayer–funded public school and community libraries."

166.    In January 2024, Defendants Wallace and Schneider began to demand the censorship in school libraries of nearly 200 books they subjectively deemed or characterized as "explicit."

167.    Defendant Schneider also embarked on a defamatory crusade, falsely claiming the *Little* plaintiffs sued her for "protecting children" from books that are "pornographic."   She accused the lawsuit of being grounded in "lies and misinformation."

<u>**CLAIMS FOR RELIEF**</u>

**FIRST, SECOND, AND THIRD CLAIMS FOR RELIEF**
**Violations of 42 U.S.C. § 1981, Brought Through 42 U.S.C. § 1983**
**Discrimination/Retaliation/Anticipatory Retaliation on the Basis of Race, Ethnicity, and/or Ancestry**
**(Against All Defendants)**

168.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

169.    Defendants were acting under color of state law.

170.    At all times relevant to this claim, Ms. Baker enjoyed federal rights to oppose discriminatory practices against protected racial, ethnic, and ancestorial classes; associate with

these protected classes; advocate on behalf of these protected classes; and made it reasonably apparent that engaged in such protected conduct or would do so in the future.

171.   42 U.S.C. § 1981 protects those employees, whether public or private, who oppose discriminatory practices. To "oppose" an unlawful employment practice is to "antagonize . . .; contend against; . . . confront; resist; [or] withstand" it. *Crawford v. Metro Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009); *see also Weeks v. Kan.*, 503 F. App'x 640, 643 (10th Cir. 2012). And opposing a discriminatory practice "based on a mistaken good faith belief" that is sufficient. *Crumpacker v. Kan. Dep't of Hum. Res.*, 338 F.3d 1163, 1171 (10th Cir. 2003).

172.   Courts have construed prophylactic federal statutes "broadly in this context to accord with Congress's stated purpose of ending [] discrimination in the workplace."

173.   The law "protects individuals who, though not members of a protected class, are victims of discriminatory animus toward [protected] third persons with whom the individuals associate." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 512 (6th Cir. 2009); *see also Sines v. Kessler*, 558 F. Supp. 3d 250 (W.D. Va. 2021) (finding Charlottesville rally participants presented sufficient evidence of defendant white supremacy group members' generalized desire to commit racial violence to survive summary judgement).

174.   "Individuals are also protected from discrimination because of their advocacy on behalf of protected class members." *Barrett*, 556 F.3d at 513.

175.   Where a public employee opposes discriminatory practices, associates with protected classes, and/or advocates on behalf of protected classes, protected characteristics are "imputed" to the public employee. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 575 (6th Cir. 2000).

176.     Finally, the law also protects individuals who make it reasonably apparent that they will continue engaging in protected opposition, advocacy, and/or association. Specifically, because "[a]ction taken against an individual in anticipation of that person engaging in protected opposition to discrimination is no less retaliatory than action taken after the fact," courts have held that "this form of pre-emptive retaliation falls within the scope of 42 U.S.C. 2000e-3(a)." *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993); *see also Holt v. Houston Methodist Sugar Land Hosp.*, No. 4:19-CV-564, 2020 WL 989911, at *7 (S.D. Tex. Feb. 10, 2020) (quoting *Sauers*); *E.E.O.C. v. Bank of Okla.*, No. 03-CV-0657-CVE-PJC, 2005 WL 7870754, at *5 (N.D. Okla. Jan. 18, 2005); *E.E.O.C. v. Cognis Corp.*, No. 10-CV-2182, 2012 WL 1893725, at *2 (C.D. Ill. May 23, 2012).

177.     In the Fifth Circuit, § 1981 claims brought against state or municipal actors may be asserted through § 1983.

178.     As alleged herein, Defendants Cunningham in his official capacity, and Milum in her official capacity, had final policymaking authority from Defendant Llano County when they retaliated, discriminated, and engaged in anticipatory retaliation against Ms. Baker because of her opposition to racially discriminatory practices, her association with and advocacy on behalf of protected classes, and the reasonable expectation that she would continue engaging in protected activities.

179.     As alleged herein, Defendants Cunningham, Milum, Moss, Wallace, Wells, Schneider, and Baskin were an affirmative link and a causal connection to the discrimination, retaliation, and anticipatory retaliation carried out by the above-listed final policymakers. Defendants Cunningham, Milum, Moss, Wallace, Wells, Schneider, and Baskin had control of employment and operational decisions within the Llano County Library System and exercised that control to discriminate and retaliate against Ms. Baker.

180.     At all times relevant to this claim, it was clearly established that supervisors and board members could not interfere with an employee's right to the full and equal benefit of the laws, to equal employment opportunities, and to make and enforce contracts by discriminating and retaliating against employees on the basis of their race-based opposition, advocacy, and association. Any reasonable supervisor or board member acting under color of state law knew or should have known of these clearly established rights.

181.     Among other acts of discrimination and retaliation alleged herein, Defendants were overwhelmingly hostile and harassing towards Ms. Baker and her protected activities, encouraged others to be so as well, and ultimately terminated Ms. Baker's employment.

182.     Defendants' discriminatory animus towards racial, ethnic, and/or ancestral minorities and Ms. Baker's protected activities were the but-for cause of Defendants' adverse actions.

183.     Individual Defendants' actions, as alleged herein, were undertaken with malice or reckless disregard for Ms. Baker's federally protected rights.

184.     As a result of Defendants' conduct, Ms. Baker suffered actual economic damages and suffered other injuries, damages, and losses, including severe emotional distress and pain and suffering in an amount to be proved at trial.

**FOURTH, FIFTH, AND SIXTH CLAIMS FOR RELIEF**
**Violations of the Equal Protection Clause, Brought Through 42 U.S.C. § 1983**
**Discrimination/Retaliation/Anticipatory Retaliation on the Basis of Sex, Sexual**
**Orientation, and/or Gender Identity**
**(Against All Defendants)**

185.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

186.     At all times relevant to this claim, Defendants were acting under color of state law.

34

187.    Like Title VII and 42 U.S.C. § 1981, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution protects individuals who oppose discriminatory practices against, advocate on behalf of, and associate with protected classes. Likewise, the Equal Protection Clause protects individuals who make it reasonably apparent that they will continue to engage in such protected activities.

188.    The Equal Protection Clause recognizes sex as a protected class. With respect to sex, the Supreme Court in *Bostock v. Clayton County, Georgia* held that "discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex . . . ." 590 U.S. 644, 679 (2020); *see also Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011) ("discriminating against someone on the basis of his or her gender non-conformity constitutes sex-based discrimination under the Equal Protection Clause"); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576-77 (6th Cir. 2004) (same).

189.    As alleged herein, Defendants Cunningham in his official capacity, and Milum in her official capacity had final policymaking authority from Defendant Llano County when they discriminated against, retaliated against, and engaged in anticipatory retaliation against Ms. Baker because of her opposition to sex-based discriminatory practices, her associated with and advocacy on behalf of such protected classes, and the expectation that she would continue engaging in such protected activities in the future.

190.    As alleged herein, Defendants Cunningham, Milum, Moss, Wallace, Wells, Schneider, and Baskin were an affirmative link and a causal connection to the discrimination, retaliation, and anticipatory retaliation carried out by the above-listed final policymakers. Defendants Cunningham, Milum, Moss, Wallace, Wells, Schneider, and Baskin, had control of

employment and operational decisions within the Llano County Library System and intentionally exercised that control to discriminate and retaliate against Ms. Baker.

191.    At all times relevant to this claim, it was clearly established that supervisors and board members could not deny an employee's right to equal protection under the laws of the United States by discrimination and retaliating against employees on the basis of their sex-based opposition, advocacy, and association. Any reasonable supervisor or board member acting under color of state law knew or should have known of these clearly established rights.

192.    Among other acts of discrimination and retaliation alleged herein, Defendants were overwhelmingly hostile and harassing towards Ms. Baker and her protected activities, encouraged others to be so as well, and ultimately terminated Ms. Baker's employment.

193.    Defendants' discriminatory animus towards sexual and gender minorities and Ms. Baker's protected activities were the but-for cause of Defendants' discrimination and retaliation.

194.    Individual Defendants' actions, as alleged herein, were undertaken with malice or reckless disregard for Ms. Baker's federally protected rights.

195.    As a result of Defendants' conduct, Ms. Baker suffered actual economic damages and suffered other injuries, damages, and losses, including severe emotional distress and pain and suffering in an amount to be proved at trial.

### SEVENTH AND EIGTH CLAIMS FOR RELIEF
**Violations of the First Amendment, Brought Through 42 U.S.C. § 1983**
**Discrimination and Retaliation against Protected Speech and Association**
**(Against All Defendants)**

196.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

197.    At all times relevant to this claim, Defendants were acting under color of state law.

198.    At all times relevant to this claim, Ms. Baker enjoyed the First Amendment rights to access and receive information and ideas of all protected viewpoints; engage in speech on matters of public concern; be free from state action that deters, and chills protected speech; and to associate freely.

199.    At all times relevant to this claim, Ms. Baker was entitled to oppose unconstitutional censorship, without reprisal.

200.    At all times relevant to this claim, Ms. Baker was entitled to attend library board and other meetings open to the public, to participate, associate, and speak.

201.    As alleged herein, Ms. Baker was subjected to a prior restraint of her First Amendment rights.

202.    As alleged herein, Defendants instructed Ms. Baker not to attend library board meetings, even when she was off duty.

203.    By prohibiting Ms. Baker from attending meetings, Defendants suppressed her speech and association, and did not let her speak.

204.    As alleged herein, Ms. Baker opposed, spoke out against, and refused to comply with unlawful and unconstitutional censorship, both in private and publicly.

205.    Ms. Baker spoke outside of her official duties. Ms. Baker was not responsible for making determinations about freedom of speech and the unlawfulness of Llano Public Library System's removal, segregation of, and censorship of categories of books, nor was she responsible for policymaking decisions regarding the library collection including the removal and censorship of categories of books.

206.    As a public employee, Ms. Baker's job duties did not (nor could they) include systematic suppression of the First Amendment rights of library patrons by censoring books based on disfavored content or their association with historically marginalized minority groups.

207.    Ms. Baker's critiques of Defendants and their restrictions on speech and association were outside the scope of her job duties.

208.    Ms. Baker's speech on these subjects did not contribute to or facilitate her performance of duties at the Llano Public Library System.

209.    The suppression of speech and association in public libraries is also a matter of public concern.

210.    As alleged herein, Defendants Cunningham in his official capacity, and Milum in her official capacity had final policymaking authority from Defendant Llano County when they retaliated and discriminated against Ms. Baker intending to chill and deter her protected speech and association.

211.    As alleged herein, Defendants Cunningham, Milum, Moss, Wallace, Wells, Schneider, and Baskin, were an affirmative link and a causal connection to the discrimination and retaliation carried out by the above-listed final policymakers. Defendants Cunningham, Milum, Moss, Wallace, Wells, Schneider, and Baskin, had control of employment and operational decisions within the Llano County Library System and exercised that control to discriminate and retaliate against Ms. Baker.

212.    Specifically, Defendants engaged in viewpoint discrimination and retaliation—that is, they engaged in censorship based on their disagreement with the *content* of Ms. Baker's protected speech and association. Viewpoint discrimination is presumptively unconstitutional and subject to strict scrutiny.

213.    At all times relevant to this claim, it was clearly established that supervisors and board members could not discriminate and retaliate against public employees who engage in protected speech and association because of disagreements with their viewpoints. Any reasonable supervisor or board member acting under color of state law knew or should have known of these clearly established rights.

214.    Among other acts of discrimination and retaliation alleged herein, Defendants were overwhelmingly hostile and harassing towards Ms. Baker and her protected activities, encouraged others to be so as well, and ultimately terminated Ms. Baker's employment.

215.    Individual Defendants' actions, as alleged herein, were undertaken with malice or reckless disregard for Ms. Baker's federally protected rights.

216.    The value of Ms. Baker's speech outweighed any legitimate governmental interest. Indeed, Defendants' discrimination and retaliation against Ms. Baker was intentional, vexatious, willful and wanton, in total disregard for her rights, and not in furtherance of any legitimate governmental interest. Defendants' non-discriminatory and non-retaliatory reasons for their conduct are pretextual.

217.    As a result of Defendants' discrimination and retaliation, Plaintiff suffered actual economic damages and suffered other injuries, damages, and losses, including severe emotional distress and pain and suffering in an amount to be proved at trial.

**NINTH CLAIM FOR RELIEF**
**Violations of 41 U.S.C. § 1985(3)**
**Conspiracy under the Ku Klux Klan Act**
**(Against All Defendants)**

218.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

219.    Although not necessary for a § 1985 claim, at all times relevant to this claim, Defendants were acting under color of state law.

220.    Defendants Cunningham and Moss from the County Commissioners Court conspired with each other and with Defendants Wallace, Wells, Schneider, and Baskin from the Library Board and with Defendant Milum, the Director of Llano County Library System.

221.    Section 1985(3) prohibits when "two or more persons in any State or Territory conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws[.]"

222.    Plaintiff brings this claim under both the "deprivation" clause and the "hindrance clause" of section 1985(3) in that Defendants conspired both to deprive a person or class of persons equal privileges and protection of the law as described above and conspired for the purpose of preventing or hindering Ms. Baker from securing the same to all persons within the state.

223.    At all times relevant to this claim, Ms. Baker enjoyed those rights previously alleged, including the rights to equal protection under the laws of the United States and the rights to oppose discriminatory practices, advocate and associate with people of color and LGBTQ+ constituents, and to engage in protected speech.

224.    As alleged herein, Defendants plotted, coordinated, and executed a common plan with each other to engage in discrimination, retaliation, obstruction, intimidation, and threats against constituents of color and LGBTQ+ community members, and Ms. Baker by association and advocacy for them, and to remove similarly themed or content-including books from the library system, in violation of Ms. Baker's rights and those of others in their community.

225.   As alleged herein, in furtherance of their conspiracy to deprive Ms. Baker and others of equal protection or equal privileges and immunities, Defendants acted on class-based animus and engaged in acts of intimidation, threats, discrimination, and retaliation.

226.   As alleged herein, together, Defendants committed overt acts in furtherance of the conspiracy to violate Ms. Baker's rights, including, but not limited to, falsely accusing Ms. Baker's protected activities as subjecting minors to pornography, perversion, and other criminal misconduct; ordering Ms. Baker to cease protected activities and to refrain from attending public meetings; and ultimately terminating Ms. Baker's employment.

227.   As alleged herein, together, Defendants conspired to prevent and hinder Ms. Baker, from giving or securing to all patrons of the Llano County Library System their constitutional rights and equal protection of the law.

228.   The illegal activities described above were undertaken by Defendants as overt acts pursuant to an unlawful conspiracy, the purpose of which was to bother hinder Ms. Baker in giving or securing to all persons equal protection of the laws, and to oppress, harass, and stigmatize racial minorities and LGBTQ+ community members, and through them Ms. Baker; and to unlawfully remove, segregate, and censor books with disfavored content based on prejudices in violation of the rights guaranteed by the Constitution and laws of the United States.

229.   The conspiracy was motivated by a class-based invidious discriminatory animus.

230.   The conspiracy was aimed at interfering with rights that by definition are protected against private, as well as official, encroachment.

231.   The illegal activities described above were undertaken by Defendants in furtherance of their personal animus towards racial minorities and LGBTQ+ community members.

41

232.     At all times relevant to this claim, it was clearly established that supervisors and board members could not engage in conspiracies to deprive public employees of these rights. Any reasonable supervisor or board member acting under color of state law knew or should have known that such conspiracies were clearly unlawful.

233.     As a result of Defendants' conduct, Plaintiff suffered actual economic damages and suffered other injuries, damages, and losses, including severe emotional distress and pain and suffering in an amount to be proved at trial.

### *ANTICIPATED* TENTH, ELEVENTH, AND TWELTH CLAIMS FOR RELIEF[15]
### 42 U.S.C. § 2000e *et seq.*
### Discrimination, Retaliation, and Anticipatory Retaliation on the Basis of Race, National Origin, Color, and Sex in Violation of Title VII of the Civil Rights Act of 1964
### (Against Defendants Llano County)

234.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

235.     Defendants are duly warned that Ms. Baker intends to move to amend her Complaint to include Title VII violations as soon as she administratively exhausts with the EEOC and that discovery into the claims should proceed henceforth.

236.     Ms. Baker alleges claims under Title VII of the Civil Rights Act of 1964 similar in nature, including associational, advocacy, and retaliatory discrimination (including anticipatory retaliation), as those described in the claims under 42 U.S.C. § 1981 and 1983 for race and sex (including sexual orientation and gender identity) discrimination. Title VII also protects against similar modes of discrimination and retaliation based on national origin and color.

---

[15] These claims are set forth herein to avoid delay and confusion later on. Plaintiff will move to amend the Complaint to formally add these claims upon completion of the administrative exhaustion process.

237.     Among other acts of discrimination and retaliation alleged herein, Defendants were overwhelmingly hostile and harassing towards Ms. Baker and her protected activities, encouraged others to be so as well, and ultimately terminated Ms. Baker's employment.

238.     Defendants' discriminatory animus towards protected classes was a motivating factor of Defendants' adverse actions against Ms. Baker, and their retaliatory animus was the but-for causation for the same.

239.     Defendants' actions, as alleged herein, were undertaken with malice or reckless disregard for Ms. Baker's federally protected rights.

240.     As a result of Defendants' conduct, Ms. Baker suffered actual economic damages and suffered other injuries, damages, and losses, including severe emotional distress and pain and suffering in an amount to be proved at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award her all relief as allowed by law, including but not limited to the following:

a.     All declaratory relief and injunctive relief, as appropriate;

b.     Actual economic damages, including but not limited to back pay, font pay, and lost benefits, as established at trial;

c.     Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses;

e.     Punitive damages for all claims as allowed by law, to the maximum amount permitted and in an amount to be determined at trial;

f.     Prejudgment and post-judgment interest at the highest lawful rate;

g.     A tax-offset;

h.    Attorneys' fees and costs; and

i.    Such further relief as justice requires, including further injunctive relief against all Defendants to cease and desist from discrimination, retaliation, and censorship.

Date: March 22, 2024

Respectfully submitted,

*/s/ Iris Halpern*
Iris Halpern*
Colo. State Bar No. 53112
Azra Taslimi*
Colo. State Bar No. 44317
RATHOD | MOHAMEDBHAI LLC
2701 Lawrence Street
Denver, CO 80205
Telephone: (303) 578-4400
Facsimile: (303) 578-4401
ih@rmlawyers.com
at@rmlawyers.com
*Attorneys for Plaintiff*

*\* Admitted Pro Hac Vice*

JEFF EDWARDS
State Bar No. 24014406
MICHAEL SINGLEY
State Bar No. 00794642
DAVID JAMES
State Bar No. 24092572
LISA SNEAD
State Bar No. 24062204
PAUL SAMUEL
State Bar No. 24124463
EDWARDS LAW
603 W. 17th St.
Austin, Texas 78701
Tel.  512-623-7727
Fax.  512-623-7729
jeff@edwards-law.com
mike@edwards-law.com
david@edwards-law.com
lisa@edwards-law.com
paul@edwards-law.com