IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

BARBARA SUZETTE BAKER,               §
                                     §
            Plaintiff,               §
                                     §
v.                                   §          1:24-CV-228-RP
                                     §
LLANO COUNTY, *a municipality,*      §
RON CUNNINGHAM, *in his official capacity* §
*as Presiding Officer of the  Llano County* §
*Commissioners Court, and his individual capacity,* §
AMBER MILUM, *in her official capacity as* §
*Director of Llano County Library System and her* §
*Individual capacity,* JERRY DON MOSS, §
*in his official and individual capacity,* §
BONNIE WALLACE, *in her official and* §
*individual capacity,* ROCHELLE WELLS, *in her* §
*official and individual capacity,* GAY BASKIN, §
*in her official and individual capacity,* and §
RHONDA SCHNEIDER, *in her official and* §
*individual capacity,*                §
                                     §
            Defendants.              §

## ORDER

Before the Court is Defendants Llano County, et al.'s ("Defendants") Motion to Dismiss. (Dkt. 14). Plaintiff Barbara Suzette Baker ("Baker") filed a response, (Dkt. 16), and Defendants filed a reply, (Dkt. 20-2). Having considered the parties' submissions, the record, and the applicable law, the Court will grant the motion in part and deny the motion in part.

## I. BACKGROUND

Baker alleges the following facts: Baker began working for the Llano County library system as a young adult ("YA") librarian at the Kingsland Library in 2016. (Am. Compl., Dkt. 13, at 7–8). In March 2020, Baker was promoted to head librarian at the Kingsland Library. (*Id.*). As head librarian, Baker reported to the Llano County Library System Director: Defendant Amber Milum ("Milum"). (*Id.*). Some of Baker's head librarian duties were to choose materials for the Kingsland Library,

submit those materials to Milum for purchase, and put the materials into the library system for circulation. (*Id.*).

Baker's time as head librarian appears to have proceeded smoothly for her first year on the job. (*See id.*). In 2021, however, the Llano County library system was allegedly swept up in a "frenzy" of censorship and book bans that took place across the country. (*Id.*). The activity began in early October 2021, when a group of community members, including Defendants Gay Baskin ("Baskin"), Rhonda Schneider ("Schneider"), Bonnie Wallace ("Wallace"), and Rochelle Wells ("Wells"), started to examine the Llano County Library System's book collection to identify titles that they deemed inappropriate. (*Id.* at 11). The group allegedly focused on removing books that either advocated for LGBTQ rights or racial justice. (*Id.*). The group also targeted books supposedly promoting "grooming" children by depicting cartoon nudity, such as *In the Night Kitchen* by Maurice Sendak, or bodily functions like farting, such as *Gary the Goose and His Gas on the Loose* and *Freddie the Farting Snowman*. (*Id.* at 10–16).

When confronted with requests to remove these books, Baker opposed the community group, believing that it would constitute unlawful censorship. (*Id.* at 10). Instead, Baker emailed Milum to suggest that librarians should counter the concerns of parents "with information on how to effectively see what their children are doing and on how to choose books." (*Id.*).

However, on October 18, Jerry Don Moss ("Moss"), an officer of Defendant Llano County Commissioners Court, met with Milum to discuss whether she should lose her job for not yielding to the demands that these "inappropriate" books be removed. (*Id.*). Milum left the meeting with the understanding that her job would not be in jeopardy if she "worked on the improvements [they] spoke about," referring to the removal of "inappropriate" books. (*Id.*).

The campaign to remove "inappropriate" books escalated through the fall. On October 25, 2021, Texas State Representative Matt Krause sent a letter to the Texas Education Agency targeting

850 books—the "Krause List"—for allegedly containing material that he disagreed with politically or "containe[ed] material that might make students feel discomfort . . . because of their race or sex[.]" (*Id.* at 10). Defendant Wallace created a spreadsheet (the "Wallace Spreadsheet") identifying books on the Krause List, allegedly labeling them "pornographic filth." (*Id.*). These books included several titles that were written by or centered on the experiences of LGBTQ individuals. (*Id.*). Other "pornographic filth" included books describing and promoting critical race theory ("CRT"), an interdisciplinary academic framework that examines ways in which race and racism intersect with culture, politics, and law. (*Id.*). On November 5, Milum emailed Baker to emphasize the need to watch what they said, because Defendant Schneider was "going door to door and building an army." (*Id.* at 11). When Baker raised concerns that they might be violating the First Amendment by removing books, Milum instructed Baker that "we are putting a positive spin on all of our changes. We are not saying why we are doing it we are just pointing out the positives of the changes . . . ." (*Id.* at 12). On November 8, Ross Cunningham ("Cunningham"), County Judge and Presiding Officer of Defendant Llano County Commissioners Court, emailed Milum and instructed her to pull "[a]ny books with photos of naked or sexual conduct . . . ." (*Id.*).

Two days later, Wallace emailed several Llano County officials and requested the libraries relocate the "pornographic filth" books to the adult section of the library. (*Id.*). Cunningham emailed the Wallace Spreadsheet to Milum and directed her to remove any books that depicted sexual activity or questionable nudity, totaling approximately sixty books. (*Id.* at 13). Milum then assured Cunningham of her efforts to get rid of the LGBTQ and CRT books, stating that she "would never purchase a book like that for the libraries" and was "working on getting books pulled." (*Id.* at 14). Milum then sent the Wallace Spreadsheet to Baker and instructed her to remove all books on the list from circulation at the Kingsland Library. (*Id.*)

Baker opposed the request. She informed Milum that in her opinion, removing the books based on the Llano County officials' disagreement with the views and content of the books would violate the First Amendment. (*Id.*). She asked Milum to consult the Llano County Attorney's Office to check whether removing the books would violate the First Amendment. (*Id.*).

At the same time, Baker also attempted to stop Milum from surreptitiously "weeding" books from circulation in the Kingsland Library. (*Id.* at 15). Allegedly, Milum would pull books from shelves, such as *Critical Race Theory* (3rd Edition), and hide them behind the front desk so that the books were no longer on the shelves but also not officially removed from circulation. (*Id.*). According to Baker, these removals violated the official policy for "weeding" books. Ordinarily, books are removed twice a year in February and August, and only if they have not been checked out in five years, are outdated, or are in poor condition. (*Id.*). However, according to Baker, from July to November 2021, Milum "weeded" at least seventeen books. (*Id.*). Many of these books were in good condition, had been checked out recently, and did not meet the official weeding criteria. (*Id.*).

On December 2, Wells emailed an update on the book removal efforts, stating that she would be suspending the library's e-book service because it contained two pro-LGBTQ books and would close the library for three days to remove books that contain "pornographic content." (*Id.* at 18). In addition, Wells said that she would appoint a new Library Advisory Board to revamp its book retention policies. (*Id.* at 18). In January 2022, Cunningham and Moss dissolved the existing Library Board and created a "New Library Board" consisting of Baker, Schneider, Wallace, and Wells—the community members who had led the book removal campaign. (*Id.* at 20). The New Library Board asked Moss to "persuade" Cunningham to close their meetings so that patrons could not attend and take notes. (*Id.*). The New Library Board held its first meeting on January 24, 2022. (*Id.* at 21). Baker alleges that she "attended this meeting as a private citizen" and not in her capacity as a librarian. (*Id.*). The next day, Baker attended a meeting for the "Friends of the Library," a 501(c)(3)

component of the Kingsland Library. (*Id.*). Baker alleges that she regularly attended Friends of the Library meetings as part of her job. (*Id.*). Baker also attended a Bylaw Committee meeting at the Kingsland Library, which was established to draft bylaws for the New Library Board. (*Id.*). Baker again contends that she attended only as a private citizen. (*Id.* at 22). Baskin asked Baker why she was at the meeting and Baker told Baskin that she was concerned about the censorship efforts of the New Library Board and its impact on her ability to access books as a Llano County resident and library patron. (*Id.*).

On February 9, 2022, Milum issued a written reprimand to Baker for having attended the Friends of the Library meeting on January 25. (*Id.*). The reprimand accused Baker of insubordination and allowing her personal opinions to interfere with her job duties. (*Id.*). The New Library Board held another meeting on February 10, which both Baker and Milum attended. (*Id.* at 23). On February 16, Milum emailed Baker to inform her that she was prohibited from attending future board meetings and that Cunningham prohibited librarians from using personal or vacation time to attend the meetings. (*Id.*).

Around the same time, Baker changed the marquee in front of the Kingsland Library to read "we put the 'lit' in literature," suggesting that the library was engaging in modern-day "book burning." Baker also highlighted other "banned" books on a library shelf, including *To Kill a Mockingbird* by Harper Lee and *How to be an Anti-Racist* by Ibram X. Kendi. (*Id.* at 24). The next day, Milum ordered the signage and the book display removed. (*Id.* at 25).

On March 9, 2022, Milum fired Baker, allegedly for "insubordination," "creating a disturbance," "violation of policies," "failure to follow instructions," and "allowing personal opinions to interfere with job duties and procedures." (*Id.* at 26).

A month later, a group of Llano County community members filed suit in this Court against many of the same Defendants in this case, alleging that the removal of books violated their First

Amendment rights. *Little v. Llano Cnty.*, No. 1:22-cv-00424-RP (W.D. Tex. filed Apr. 25, 2022). This Court held a hearing on those plaintiffs' motion for a preliminary injunction and heard testimony from several Llano County library officials. *Id.* (Dkts. 79, 80). As Plaintiffs recount in their complaint in this case, several Llano County officials testified at the hearing that they targeted books with pro-LGBTQ themes and removed books promoting CRT as "pitt[ing] races against each other." (*Id.* at 28–32). The Court preliminarily enjoined the Llano County officials from removing the books at issue. *Id.* (Order, Dkt. 133). That preliminary injunction is currently on appeal at the Fifth Circuit. *Llano Cnty. v. Little*, No. 23-50224 (5th Cir. 2023).

Baker filed this suit on March 4, 2024, and amended her complaint on May 23, 2024. (Compl., Dkt. 1; Am. Compl., Dkt. 13). She brings claims against Llano County as a municipality; Moss, Wallace, Wells, Schneider, and Baskin, in their individual capacity; and against Milum and Cunningham in their individual and official capacities. (Am. Compl., Dkt. 13, at 1). Baker brings claims for violations of 42 U.S.C. § 1981 and § 1983 against all Defendants. (*Id.* at 34). Baker argues that she was targeted for opposing the removal of books that advocated for racial minorities, which constituted unlawful discrimination. (*Id.* at 34–35). She similarly argues that being targeted for opposing the removal of LGTBQ books constituted sex discrimination. (*Id.* at 37). Baker also brings claims under § 1983 for violations of her First Amendment rights of protected speech and association, arguing that she was entitled to oppose censorship and attend library board meetings without reprisal from Llano County officials. (*Id.* at 38–39). Baker also brings a claim under the Klu Klux Klan Act, 42 U.S.C. § 1985(3), arguing that Defendants conspired to prevent Baker from protecting the equal rights of racial minorities and LGTBQ community members.[1] Finally, Baker notes that she anticipates bringing claims under the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, for

---

[1] Baker's amended complaint mistakenly cites "41 U.S.C. § 1985(3)." (*Id.* at 41). The Court understands the complaint to bring a cause of action under Title 42 of the U.S. Code.

racial and sex discrimination, but that she cannot yet formally assert those claims because her EEOC charge remains pending.[2]

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area*

---

[2] Baker notes that she brings suit prior to the EEOC charge because she "has other claims for which the statute of limitations is not tolled while her Title VII claims are under investigation." (*Id.* at 7).

*Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

Defendants' motion raises several arguments: (1) Baker's official capacity claims are duplicative of her claims against Llano County; (2) Cunningham, Moss, Wallace, Schneider, and Baskin are entitled to legislative immunity; (3) Baker's § 1981 and § 1983 discrimination claims fail because she has not identified a final policymaker, does not allege elements of a racial discrimination claim, cannot assert an anticipatory retaliation claim, and does not allege specific actions by Defendants apart from Milum; (4) Baker's § 1983 free speech claim fails because her expression was as a public employee rather than a private citizen, she cannot identify a policymaker, and she cannot allege specific acts by Defendants other than Milum; and (5) Baker's § 1985(3) claim fails because the intracorporate conspiracy doctrine bars a plaintiff from asserting that a corporate entity conspired with itself. (Mot. Dismiss, Dkt. 14). The Court will address each argument in turn.

### A. Official Capacity Claims

Baker brings claims against two Defendants in their official capacity: Cunningham as Llano County Judge and Milum as Llano County Library System Director. (Am. Compl., Dkt. 13). Baker also brings claims against Llano County itself, as an official municipal entity. (*Id.*). Both Cunningham and Milum move to dismiss the official capacity claims, arguing that they duplicate Baker's claims against Llano County. (Mot. Dismiss, Dkt. 14, at 10). In response, Baker argues that the official capacity claims are appropriate for § 1983 claims because they allow Baker to "identify individuals whose actions represent official policy responsible for the alleged violations." (Resp., Dkt. 16, at 8–9). Baker also suggests that the official capacity claims are appropriate for injunctive relief. (*Id.* at 9).

"[A] suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent[.]'" *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 n.2 (1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Here,"[t]he official-capacity claims and the claims against the governmental entity essentially merge." *Turner v. Houma Mun. Fire and Police*

*Civ. Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). "If the claims against an official in his official capacity seek identical relief as claims against a governmental entity, the official capacity claims may be dismissed as duplicative." *Notariano v. Tangipahoa Par. Sch. Bd.*, 266 F. Supp. 3d 919, 928 (E.D. La. 2017) (citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)).

Baker appears to seek identical relief from Cunningham and Milum (in their official capacities) as from Llano County itself. From all Defendants, Baker seeks damages for violations of § 1983, so all claims for damages are duplicative. (Am. Compl., Dkt. 13, at 33–46). Baker suggests that the relief is different because she seeks "injunctive relief . . . to cease and desist from discrimination, retaliation, and censorship" against Cunningham and Milum. (*Id.* at 16). However, equitable relief is available against Llano County and Llano County officials under § 1983. *See Broyles v. Texas*, 618 F. Supp. 2d 661, 682 (S.D. Tex. 2009) ("Damages and injunctive relief are available against municipalities and municipal officials in their official capacities."), *aff'd*, 381 F. App'x. 370 (5th Cir. 2010) (unpublished). Because Baker seeks the same relief against the official capacity Defendants as from Llano County, the claims are duplicative.

Baker also argues against dismissal by suggesting that she must sue Cunningham and Milum in their official capacities to establish that they were official policymakers. To state a *Monell* claim, a plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Soto v. Monge*, No. EP-23-CV-256-KC, 2024 WL 2794062, at *8 (W.D. Tex. May 31, 2024) (citing *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010)); *see also Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). However, the "identity of the policymaker is a question of law." *Groden v. City of Dallas, Texas*, 826 F.3d 280, 282 (5th Cir. 2016). Baker does not

need to name Milum and Cunningham as official defendants because their status as policymakers is determined by law, not by any capacity in which they are sued as Defendants.[3]

In sum, Baker's suit against Cunningham and Milum in their official capacity duplicates her suit against Llano County. Because the official capacity claims allege the same claims as those against Llano County and are unnecessary to establish the existence of a municipal policymaker, Baker's claims against Milum and Cunningham in their official capacity merge with those against Llano County. *See Notariano*, 266 F. Supp. 3d at 928. Accordingly, the Court will dismiss these claims. *See Castro Romero*, 256 F.3d at 355 (affirming dismissal of duplicative official capacity claim).

### B. Legislative Immunity

Next, the Court turns to Defendants Cunningham, Moss, Wallace, Schneider, and Baskin's argument that they are entitled to absolute legislative immunity. (Mot. Dismiss, Dkt. 14, at 11). Cunningham claims immunity as County Judge; Moss claims immunity as an officer of the Llano County Commissioners Court; and Wallace, Schneider, and Baskin claim immunity as members of the New Library Board. (*Id.*; Am. Compl., Dkt. 13, at 3–4).

Local legislators are absolutely immune from liability for their legislative acts. *Bogan v. Scott–Harris*, 523 U.S. 44, 54 (1998). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* "[N]ot all actions taken by an official with legislative duties are protected by absolute immunity." *Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 135 (5th Cir. 1986). The Fifth Circuit distinguishes between "officials fulfilling legislative functions" and "administrative application of existing policies." *Hughes v. Tarrant Cnty. Tex.*, 948 F.2d

---

[3] Under certain *Monell* claims, a plaintiff must identify a specific individual who violated the plaintiff's constitutional rights in order for liability to be imputed to the municipality. *See Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999); *Brown v. Lyford*, 243 F.3d 185, 191 n.18 (5th Cir. 2001). Here, Baker sues Cunningham and Milum in their official capacity to show policymaking identity, not for violations of constitutional rights. Moreover, Cunningham and Milum are sued in their individual capacity, where they are alleged to have violated Baker's constitutional rights. The suit against them in their official capacity is unnecessary to establish municipal liability.

918, 920 (5th Cir. 1991) (citing *Minton*, 803 F.2d at 135). The Fifth Circuit employs two tests to classify acts as administrative or legislative:

> The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are "legislative facts," such as "generalizations concerning a policy or state of affairs," then the decision is legislative. If the facts used in the decisionmaking are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the "particularity of the impact of the state action." If the action involves establishment of a general policy, it is legislative; if the action single[s] out specific individuals and affect[s] them differently from others, it is administrative.

*Id.* at 921 (citing *Cutting v. Muzzey*, 724 F.2d 259, 261 (1st Cir. 1984)).

Under both tests, Baker alleges several actions that could plausibly be classified as "administrative." (Am. Compl., Dkt. 13). For example, Baker notes that Cunningham, Moss, Wallace, Wells, Schneider, and Baskin "planned, authorized, and supported [Baker's] termination." (*Id.* at 26). Wallace created a spreadsheet of books that should be removed, while Wells emailed other Defendants about efforts to remove books. (*Id.* at 9–14). Milum herself noted that Schnieder was "going door to door and building an army" to support removing books from the library. (*Id.* at 11). Moss, meanwhile, met with Milum, allegedly to pressure her into making sure that books would be removed from the library, an effort apparently supported by Cunningham. (*Id.* at 10).

Viewing the facts in the light most favorable to Baker, these actions are administrative. They do not concern the creation of a general policy, but rather, specific actions taken by the leaders of an organization to accomplish discrete ends, such as ensuring that Milum removed books from shelves. As a whole, Baker's complaint focuses on her termination and Defendants' enforcement of their "book bans"—not the enactment of book bans as a legislative policy.

Additionally, Defendants' legislative immunity defense is premature at this stage of litigation. Legislative immunity is an affirmative defense, and affirmative defenses are ill-fashioned for motions to dismiss. *See Plaquemines Par. Ventures, LLC v. Plaquemines Par. Council*, No. CV 23-7337, 2024 WL

1463186, at *2 (E.D. La. Apr. 4, 2024); *Lee v. Whispering Oaks Home Owners' Ass'n*, 797 F. Supp. 2d 740, 758 (W.D. Tex. 2011). "Although dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017). That is not the case here. Defendants have not met the high burden of showing that every act in the complaint was a protected legislative decision. Even assuming that some New Library Board decisions are entitled to legislative immunity, Baker alleges several employment actions that are plausibly classified as administrative, rendering the legislative immunity defense premature.

### C. Section 1981 and 1983 Discrimination Claims

#### 1. Cunningham is an official policymaker.

Defendants suggest several deficiencies in Baker's § 1981 and § 1983 claims, beginning with the alleged lack of an official policymaker. (Mot. Dismiss, Dkt. 14, at 13 ("Plaintiff makes only conclusory and contradictory statement[s] in her pleading with respect to policymaker status . . . .")). To establish municipal liability under § 1983, a plaintiff must show that an official policy promulgated by the municipal policymaker was the moving force behind the violation of a constitutional right. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The initial inquiry is identification of officials or governmental bodies "who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Bolton v. City of Dallas, Texas*, 541 F.3d 545, 548 (5th Cir. 2008) (*quoting McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 (1997)). Whether an individual is a final policymaker for the county is a question of state law. *Bolton*, 541 F.3d at 548.

The Fifth Circuit has held that "County Judges are policymakers for the municipality." *ODonnell v. Harris Cnty.*, 892 F.3d 147, 155 (5th Cir. 2018), *overruled on separate grounds by Daves v. Dallas Cnty., Texas*, 64 F.4th 616 (5th Cir. 2023). "Texas law explicitly establishes that the Judges are 'county

officers'" and are properly sued "as municipal officers in their capacity as county policymakers." *Id.* at 155–56. "In addition to his judicial duties, a Texas county judge is charged by the state constitution and statutes with the performance of numerous executive, legislative and administrative chores in the day-to-day governance of the county." *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980). "Thus, at least in those areas in which he, alone, is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one 'whose edicts or acts may fairly be said to represent official policy' for which the county may be held responsible under section 1983." *Id.*

To the extent he held final authority, Cunningham, as County Judge, is properly identified as the county policymaker. To the extent that Baker complains of actions under Llano County's official policy, it is plausible that the Commissioners Court also acted as the final policymaker. *See Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc) ("Actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority."). There is no inconsistency in Baker's allegations, because it is possible that certain policies were implemented by the County Judge and others by the County Commissioner's Court.

Moreover, at the motion to dismiss stage, a plaintiff does not need to conclusively identify a single policymaker. *See Groden v. City of Dallas, Tex.*, 826 F.3d 280, 284–85 (5th Cir. 2016) ("[C]ourts should not grant motions to dismiss for failing to plead the specific identity of the policymaker."). To survive a motion to dismiss, a plaintiff "need[] only to plead facts . . . which establish that the challenged policy was promulgated or ratified by the [municipality's] policymaker." *Id.* Baker's complaint meets that threshold. It alleges that Cunningham and the County Commissioner's Court implemented a policy to improperly remove certain books from shelves and ensure that employees complied with this allegedly unconstitutional policy. Baker also plausibly suggests that those

policymakers delegated policymaking authority to the New Library Board. *Webster*, 735 F.2d at 841 (official policy includes those "to whom the lawmakers have delegated policy-making authority").

In their reply, Defendants suggest that Baker fails to identify a policymaker because Llano County "does not delegate authority to county judges to establish personnel policies" and that Milum is not a policymaker because "she is not the Llano County policymaker." (Reply, Dkt. 20-2, at 7–8 (citing *Doe v. Burleson Cnty., Texas*, 86 F.4th 172, 177–78 (5th Cir. 2023)). However, *Doe v. Burleson* simply does not say—as Defendants suggest—that a county judge lacks policymaking authority for personnel decisions. *See* 86 F.4th at 177–78. Rather, the case held that a county judge did not hold policymaking authority to approve his own sexual misconduct, not that county judges lack policymaking authority over all personnel decisions as a matter of Texas law. Because county judges are the relevant policymakers for the "day-to-day governance" of their counties, it is plausible that Cunningham's governance included personnel decisions in Llano County. *Familias Unidas*, 619 F.2d at 404. And if Llano County is correct in its suggestion that Milum alone made the decision to terminate Baker, it is plausible that she either (1) was delegated policymaking authority to decide personnel issues or (2) acted pursuant to a policy promulgated by the Llano County Judge or Commissioner's Court. Overall, Baker has readily satisfied the burden of identifying the relevant policymakers for her § 1981 claim at the motion to dismiss stage.

2. Baker alleges the elements of race and sex discrimination claims.

Next, Defendants argue that Baker "fails to plead facts establishing any of the elements of a racial discrimination claim." (Mot. Dismiss, Dkt. 14, at 13). Defendants argue that Baker's § 1981 claim for discrimination must meet the elements of a Title VII claim for racial discrimination. (*Id.* (citing *Caldwell v. Lozano*, 689 F. App'x 315, 321 (5th Cir. 2017))). A Title VII claim requires a plaintiff to show she (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered an adverse employment action by the employer; and (4) was replaced

by someone outside the protected group or was treated less favorably than other similarly situated employees outside the protected group. *Caldwell*, 689 F. App'x at 321.

However, Baker brings associational and advocacy claims, arguing that she was terminated for her advocacy of racial minorities and LGTBQ groups, rather than for discrimination itself. (*See* Compl., Dkt. 13, at 34–38; Resp., Dkt. 16, at 15–16). By misunderstanding the nature of Baker's § 1981 race discrimination claim, Defendants fail to contest the elements of her association or advocacy claim. In their reply, Defendants still make no mention of association or advocacy claims. (*See* Reply, Dkt. 20-2, at 12). *See Naranjo v. Nick's Mgt., Inc.*, 652 F. Supp. 3d 737, 747 (N.D. Tex. 2023) (issue waived where argument not contested).

"[T]he Supreme Court has ruled that Title VII can forbid discrimination on the basis of association with or advocacy for a protected party." *Fulton v. Mississippi State U.*, No. 1:17-CV-70-GHD-DAS, 2018 WL 651342, at *3 (N.D. Miss. Jan. 31, 2018) (citing *Thompson v. North American Stainless, LP*, 562 U.S. 170, 174–75 (2011)). This is because the law "protects individuals who, though not members of a protected class, are "victims of discriminatory animus toward [protected] third persons with whom the individuals associate." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 512 (6th Cir. 2009). An employee may sustain a claim of unlawful associational discrimination if she can show that: (1) she was discriminated against at work (2) because she associated with members of a protected class. *Id.* at 513. "Individuals are also protected from discrimination because of their advocacy on behalf of protected class members." *Barrett*, 556 F.3d at 513 (describing nature of advocacy claims under Title VII). "As with the question of association, the key questions are whether [employees] were discriminated against, and whether the reason for the discrimination was their advocacy for protected employees." *Id.* at 514. Baker alleges that she was associated with patrons who were racial minorities or members of the LGBTQ community because she protested the removal of books that advocated for CRT and LGBTQ rights. (Am. Compl., Dkt. 13, at 13–16).

Baker also alleges she was punished and terminated for advocating against the removal of pro-CRT and LGBTQ books. (*Id.*). Based on these factual allegations, it is plausible that Baker was terminated in part because she advocated for minority groups against the wishes of Defendants or was associated with these groups.

Next, Defendants suggest that Baker cannot plead racial discrimination because her complaint shows that she was terminated for insubordination. (Mot. Dismiss, Dkt. 14, at 14). Viewing the facts in the light most favorable to Baker, this conclusion is premature. It is plausible that the stated reasons for Baker's termination—insubordination, creating a disturbance, and failing to follow directions—were pretextual. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). It is also plausible that Defendants' policies themselves were unconstitutional, and that those actions preceded any alleged insubordination by Baker.

### 3. The anticipatory retaliation question is premature.

Defendants also move to dismiss Baker's alleged claim for anticipatory retaliation. (Mot. Dismiss, Dkt. 14). Based on Baker's complaint, however, it is not entirely clear that the retaliation was "anticipatory." Rather, the retaliation alleged in Baker's complaint appears to be actual retaliation, being based on the past actions she had already taken. (*See generally* Am. Compl., Dkt. 13). And the ultimate question of whether this Court should recognize any anticipatory retaliation claim is premature because Baker's Title VII EEOC charge is still pending. (*Id.* at 44–45). Baker notes that those claims, for now, are merely "anticipated." Because there appears to be no facts supporting anticipatory retaliation, the Court will dismiss the claims without prejudice to their refiling as timely once Baker has the chance to officially assert her Title VII claims.

### 4. Baker plausibly alleges specific actions by all Defendants.

Finally, Defendants argue that Baker "fails to identify specific, affirmative action taken by any of the individual Defendants to terminate or constitute the causal link in the termination of

Plaintiff's employment." (Mot. Dismiss, Dkt. 14, at 15). Defendants also, in a sole sentence at the end of this part of their motion, state that Baker's failure to "identify official action by each Defendant . . . that violated clearly established statutory or constitutional rights" entitles "each of the individual Defendants to qualified immunity." (*Id.*).

Defendants' single-sentence invocation of qualified immunity does not persuasively show that dismissal is justified. It is unclear, for example, if Defendants invoke qualified immunity to contest whether their actions were clearly established as unlawful or whether the pleadings are insufficiently specific. If Defendants do argue that their actions did not violate clearly established law, then their argument is unavailing. Qualified immunity offers no protection from valid Title VII discrimination claims. *See Lauderdale v. Texas Dept. of Crim. J., Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) ("[Q]ualified immunity can never offer protection for sexual harassment because, if it is actionable at all, the harassment is by definition objectively offensive and unreasonable, and qualified immunity protects only the objectively reasonable[.]") (cleaned up). If Baker can allege a plausible claim of discrimination under Title VII (through § 1981 and § 1983), then Defendants are not entitled to qualified immunity at this stage.

Instead, Defendants' argument seems to set forth the notion that because Defendants allegedly have qualified immunity, Baker's claims must be pled with heightened specificity. However, as the Supreme Court has made clear, there is no heightened pleading standard for municipal liability cases. *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993) ("We think that it is impossible to square the 'heightened pleading standard' applied by the Fifth Circuit in this case with the liberal system of 'notice pleading' set up by the Federal Rules."). So the question remains only whether Baker's claims survive the general *Twombly/Iqbal* standard, and Defendants fail to show how or why qualified immunity affects this analysis at the pleading stage.

Under the *Twombly/Iqbal* standard, Baker's claim survives. Baker alleged that Milum terminated her for opposing unconstitutional policies, detailing the factual timeline from her promotion as head librarian to Llano County's implementation of a "book ban" to her firing. (*See* Am. Compl., Dkt. 13). Incorporating the findings from the preliminary injunction order in *Little v. Llano County*, Baker shows that Defendants plausibly conspired to surreptitiously remove books from the library system, worked to ensure Milum and her employees removed the books, and took these actions in disregard of previously existing Llano County procedures. (*Id.* at 27).[4] Baker alleges that Moss, Wallace, Schneider, Gaskin, and Cunningham closed meetings to the public to avoid scrutiny, which plausibly shows they partook in the § 1981 conspiracy. (*Id.* at 16–18). Baker alleges that Wallace created a spreadsheet of inappropriate books, that Schneider targeted those who opposed the "book ban," that Cunningham and Moss took actions to suspend patrons' access to digital library materials and dissolve the existing book board, (*id.* at 11), and that the New Library Board pressured Milum into compliance by labeling pro-LGBTQ books as "pornographic filth" and pro-CRT books as pitting races against each other. (*Id.* at 9-12). Baker alleges these acts with sufficient particularity that each Defendant is plausibly liable for conspiracy under § 1981, discrimination and First Amendment violations under § 1983, and violations of the equal protection clause of § 1985(3).

---

[4] Defendants suggest that the facts described in *Little v. Llano County* do not support Baker because "that decision is on appeal to the Fifth Circuit" and "[n]o findings were made in that case about [Baker's] termination. (Reply, Dkt. 20-2, at 12). That the order is on appeal does not affect whether Baker may rely on the order's factual findings, at least at the pleading stage where factual allegations are viewed in the light most favorable to Baker. As to other factual findings about Baker, Defendants ignore that the Fifth Circuit has administratively stayed discovery since May 2023, so the only evidence produced so far in the case is that which was necessary to the plaintiffs' preliminary injunction motion. *See Little v. Llano Cnty.*, No. 23-50224 (5th Cir. May 16, 2023) (Order, Dkt. 84) (entering administrative stay).

### D. Section 1981 and 1983 Free Speech Claims

Defendants next seek to dismiss Baker's § 1983 claim for violations of her First Amendment rights. (Mot. Dismiss, Dkt. 14, at 18). "The [Supreme] Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos,* 547 U.S. 410, 417 (2006). "To establish a prima face First Amendment retaliation claim, a public employee must show, *inter alia,* that [s]he spoke as a citizen, and not as a public employee." *Paske v. Fitzgerald*, 785 F.3d 977, 983–84 (5th Cir. 2015). If that threshold question is met, then Baker must show: (1) she suffered an adverse employment decision; (2) her speech involved a matter of public concern; (3) her interest in the speech outweighed the employer's interest in promoting efficiency; and (4) her speech motivated the adverse employment action. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013).

"An employee is not speaking as a citizen—but rather in [her] role as an employee—when [s]he 'make[s] statements pursuant to [her] official duties.'" *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 421). An employee's official duties are not necessarily defined by a job description and are not limited to the subject matter of one's employment. *Garcetti*, 547 U.S. at 421–22. "Activities undertaken in the course of performing one's job are activities pursuant to official duties," even if the employee is not required to undertake the activity. *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007).

Here, Baker spoke on multiple occasions, complicating the private citizen/public employee inquiry. Baker alleges she was terminated for speech that included her attending two "Friends of the Library" meetings, attending multiple meetings of the New Library Board, and speaking to Milum to complain about ongoing censorship efforts. (Am. Compl., Dkt. 13, at 22–26). At this early pleading stage, it is plausible that Baker's statements were made as a private citizen. While her attendance at the meetings and her complaints to Milum related to her duties as a librarian, Baker's attendance at

these meetings appears not to have been a mandatory job duty—indeed, she was fired in part for attending the meetings despite instructions not to attend.

Without more details into why Baker attended the meetings, her past duties as a librarian, and what attendees said at the meetings, the Court cannot say that Baker definitively acted as a public employee. Viewing the facts most favorably to Baker, it appears plausible that her attendance of these meetings was undertaken outside her official duties. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1075 (9th Cir. 2013) ("[W]hen a public employee speaks in direct contravention to his supervisor's orders, that speech may often fall outside of the speaker's professional duties. Indeed, the fact that an employee is threatened or harassed by [her] superiors for engaging in a particular type of speech provides strong evidence that the act of speech was not, as a practical matter, within the employee's job duties . . . .") (cleaned up). Even Baker's complaint to Milum at this stage could plausibly be conceived as falling within her status as a private citizen. *See Davis v. McKinney*, 518 F.3d 304, 313 n.3 (5th Cir. 2008) ("We recognize that it is not dispositive that a public employee's statements are made internally."). In sum, a significant portion of Baker's speech leading to her termination was plausibly made in her private capacity. Accordingly, Baker's claim for First Amendment retaliation survives past the pleading stage.

### E. Section 1985(3) Claims

Last, Defendants argue that Baker cannot allege a conspiracy under § 1985(3) because of the intracorporate conspiracy doctrine. (Mot. Dismiss, Dkt. 14, at 20). That doctrine holds that, because a corporation is one entity, it cannot conspire with itself. *See Konan v. U.S. Postal Serv.*, 96 F.4th 799, 805 (5th Cir. 2024) ("[A]n agency and its employees are a 'single legal entity which is incapable of conspiring with itself.'") (quoting *Thornton v. Merchant*, 526 F. App'x 385, 388 (5th Cir. 2013)); *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) ("[T]here is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy for the entity."). Because all

Defendants allegedly acted on behalf of Llano County, Defendants allege that they did not conspire with anyone who was not also a Llano County employee, and therefore, not part of the same legal entity. (Mot. Dismiss, Dkt. 14, at 20).

As Llano County officials, Defendants cannot have conspired with each other under § 1985(3) in the course of their work. *Konan*, 96 F.4th at 805. However, employees within the same corporation (or municipality) can conspire when they act for their own personal purposes, outside the scope of their official duties. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981) (suggesting that "when the officers of a corporation act for their own personal purposes, they become independent actors, who can conspire with the corporation."). Viewed in the light most favorable to Baker, Defendants plausibly acted outside the scope of their official capacities and for personal purposes. For example, many of the New Library Board members, including Defendants Baskin, Wallace, and Wells, appear not to have been Llano County officials until their appointment to the Board. (*See* Am. Compl., Dkt. 13, at 3–20). However, their actions to remove books at the Llano County libraries began before their appointment, and thus before they could have acted as part of the "singular" Llano County entity. (*Id.* at 18). Similarly, Defendant Baskin acted as both Chairperson of the New Library Board and board member of the "Friends of the Library" 501(c)(3) entity—a separate legal entity from Llano County. And Baskin's role on the Friends of the Library board included accusing Baker of "making a great disturbance," which contributed to her termination. (*Id.* at 19). While further evidence may show that Defendants conspired solely in their official capacities, that defense is not so evident on the face of Baker's complaint as to render her conspiracy claim implausible.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendants' motion to dismiss, (Dkt. 14), is **GRANTED IN PART** and **DENIED IN PART**. Baker's official capacity claims against

Cunningham and Milum and claims for anticipatory retaliation are **DISMISSED WITHOUT PREJUDICE**. The remainder of Defendants' motion to dismiss is **DENIED**.

      **SIGNED** on August 27, 2024.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE